IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

UNITED STATES OF AMERICA

v.

RICHARD FERDINAND TOUSSAINT, JR.

NO.  3:15-CR-215-O

## GOVERNMENT'S POSITION ON FORFEITURE

The United States of America ("the government") respectfully responds to this Court's Order (dkt. 163) requiring the government to provide the evidentiary basis for the forfeiture money judgment[1] it seeks against Defendant Richard Toussaint, and in support states:

### EVIDENTIARY BASIS FOR FORFEITURE

The Court may rely on evidence already in the record and any additional evidence. *See United States v. Elder*, 682 F.3d 1065, 1073 (8th Cir. 2012) (computing the amount of a money judgment based on evidence already in the record supplemented by an agent's affidavit); *United States v. Sabhnani*, 599 F.3d 215, 262–63 (2d Cir. 2010) (forfeiture may be based on testimony in the record from the guilt phase of the trial, including evidence of the harm done to the victims). Forfeiture is a punishment that is part of sentencing, and the government must establish forfeiture by a preponderance of the

---

[1] Forfeiture may take the form of a money judgment. *United States v. Olguin*, 643 F.3d 384, 396-97 (5th Cir. 2011); *see United States v. Jafari,* 2015 WL 225444, *5 (W.D.N.Y. Jan. 16, 2015) (ruling that the government is entitled to a money judgment under 18 § 982(a)(7) when a defendant is convicted of health care fraud).

evidence. *United States v. Gasanova*, 332 F.3d 297, 300–01 (5th Cir. 2003). Further, the federal rules of evidence do not apply to sentencing proceedings. 28 U.S.C. § 1101(d)(3).

<u>AMOUNT OF FORFEITURE MONEY JUDGMENT</u>

Toussaint must forfeit the gross proceeds he received from the insurance companies without any offset or credit for services actually performed.[2] Nor is the government limited to forfeit the proceeds obtained by the substantive counts on which he was convicted. Rather, Toussaint must forfeit all proceeds derived from his health care fraud scheme.[3] And the government may use estimates to calculate the amount subject to forfeiture.[4]

Toussaint submitted or caused to be submitted hundreds of fraudulent claims over the charged two-year window from 2009 to 2010 to seven insurance companies. As a result of Toussaint's fraud, these insurance companies paid an estimated $8,333,212.18 in excess of what they should have paid.

   *1. Toussaint billed for services he did not provide.*

---

[2] *United States v. Poulin*, 461 Fed. Appx. 272, 288 (4th Cir. 2012) (per curiam) (noting that forfeiture of gross proceeds is explicit in health care fraud cases under § 982(a)(7) and the defendant must forfeit all funds received from Medicare, not just the amount above what he could have received for services actually provided); *United States v. Palazzo*, 2008 WL 5381581, *10 (E.D. La. Dec. 18, 2008) (denying the defendant who billed Medicaid at the physicians' rate instead of at the rate applicable to services provided by a physician's assistant credit for the amount she could have received legitimately and holding that she must forfeit the gross amount received from Medicaid).

[3] *United States v. Venturella*, 585 F.3d 1013, 1015, 1016-17 (7th Cir. 2009) (holding that forfeiture in a mail fraud case "is not limited to the amount of the particular mailing but extends to the entire scheme;" so the defendant's guilty plea to one substantive count involving $477 rendered her liable for money judgment of $114,000); *United States v. Boesen*, 473 F. Supp. 2d 932, 952 (S.D. Iowa 2007) (forfeiting the proceeds of the entire health care fraud scheme, not just the proceeds involved in the 82 counts on which he was convicted).

[4] *United States v. Elder*, 682 F.3d 1065, 1073 (8th Cir. 2012); *United States v. Roberts*, 660 F.3d 149, 166 (2d Cir. 2011); *United States v. Vico,* 2016 WL 233407, *7 (S.D. Fla. Jan. 20, 2016).

Toussaint submitted bills for $11,713,521.53 to insurance companies for services he claimed he personally provided during this time period. But the evidence from trial proves that he never provided any of these services. During trial, certified registered nurse anesthetists (CRNAs) testified that Toussaint was not present during procedures, did not meet with patients, was unavailable while purporting to supervise CRNAs, falsified records, and did not provide any services to the patients. After examining his billing records, the FBI found that the insurance companies paid Toussaint $5,302,455.37 for these fraudulent claims, separate and apart from what the CRNAs were paid through Ascendant Anesthesia.

   2.   *Toussaint directed CRNAs to inflate their bills.*

In addition to reviewing Toussaint's billing records for services he claimed to provide, the FBI randomly selected a sampling of approximately 345 patients and sent them to Dr. Asa Lockhart for his review. These records consisted of documents provided by Forest Park Medical Center, Doctor's Hospital White Rock Lake, Ascendant Anesthesia, and AccuPro. AccuPro was Dr. Toussaint and Ascendant Anesthesia's billing company.

Dr. Lockhart looked at these records to determine how much the CRNAs, at Toussaint's direction, inflated time. Dr. Lockhart compared billed and paid amounts to determine the percentage of the bills that were paid. He then created a sample of 125 cases, across a variety of case types, for further analysis. His analysis revealed the average excess anesthesia minutes per case was approximately 21.44 minutes. From this analysis, Dr. Lockhart determined an average inflated factor and multiplied the factor

against payments from the various insurance carriers to determine what should have been paid. He then subtracted this amount from the amount actually paid by the insurance companies to determine the excess, which came to $3,030,756.81.[5]

As evidenced at trial, Toussaint routinely represented that he rendered services that he did not perform and inflated bills using a variety of methods. He claimed to direct CRNAs when he did not. He created false medical records. He inflated the amount of time procedures took. He pre-signed medical records and indicated he performed services before any services were provided, and then did not perform those services. And he directed others to do the same, all of which caused the insurance companies to pay more than they owed. Therefore, the government seeks a money judgment for amount the insurance companies overpaid—$8,333,212.18.

FORFEITURE IS SEPARATE AND DISTINCT FROM RESTITUTION

While forfeiture is a part of the defendant's sentence designed to punish the defendant, restitution is the means to compensate victims for their losses.[6] These two amounts serve different purposes and use different calculations—they do not have to be equal.[7] Even if equal, forfeiture and restitution serve different purposes and the

---

[5] All of the CRNA bills reviewed had inflated time, and the government could seek the entire amount paid for these bills, almost $50 million, instead of merely seeking the excess the insurance companies paid stemming from the inflated time.

[6] *United States v. Joseph,* 743 F.3d 1350, 1354 (11th Cir. 2014) ("While restitution seeks to make victims whole be reimbursing them for their losses, forfeiture is meant to punish the defendant by transferring his ill-gotten gains to the United States Department of Justice.")

[7] *United States v. Torres*, 703 F.3d 194, 203 (2d Cir. 2012) (noting that the measures of forfeiture and restitution are different as their purposes are distinct and therefore may not be equal).

**Government's Forfeiture Briefing – Page 4**

government can collect both.[8] In this case, forfeiture and restitution should be calculated the same.

The Presentence Investigation Report (PSR) provided $7,365,481.40 as the restitution amount. The probation officer calculated that amount using the $5,302,455.37 the insurance companies paid to Toussaint for services he billed for but did not provide and $2,063,026.03 for inflated CRNA time. After the PSR was filed, counsel for Toussaint asked Dr. Lockhart to use a larger sample to calculate the inflated time, and using the larger data set, Dr. Lockhart calculated this amount to be $3,030,756.81.

Toussaint objected to the PSR's restitution amount under two main theories. First, he argued that the CRNAs performed anesthesia services and even if Toussaint used an improper billing code, the insurance companies would have paid the same amount. Second, he argued that Dr. Lockhart's calculation for inflated time was improper. The government addressed these arguments in its response (dkt. 145), and the probation officer maintained the $7,365,481.40 loss figure in its addendum to the PSR (dkt. 148-1).

In its response to Toussaint's objections to the PSR, the government noted that it "reserves the right to conduct a similar analysis based on a broader sample of anesthesia records." Dkt. 145 at 7–8. And, with Toussaint's assent, it did so. The result of this calculation, $3,030,756.81 instead of $2,063,026.03, should be used to calculate forfeiture and restitution. The government disclosed this amended amount to Toussaint in

---

[8] *United States v. Taylor*, 582 F.3d 558, 566 (5th Cir. 2009) (stating that forfeiture and restitution are both mandatory and serve different purposes, so they should not be offset against the other).

its response to Toussaint's objections to the PSR addendum. Dkt. 156.[9] Therefore, the government contends that the Court should order Toussaint to forfeit $8,333,212.18 as a money judgment and pay $8,333,212.18 to the victims as restitution.

Respectfully submitted,

JOHN R. PARKER
UNITED STATES ATTORNEY

/s/ Mark J. Tindall
MARK J. TINDALL
Assistant United States Attorney
Texas Bar No. 24071364
1100 Commerce Street, Third Floor
Dallas, Texas  75242-1699
Telephone:    214.659.8751
Facsimile:    214.659.8803
Email:        mark.tindall@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on July 19, 2016, I electronically filed the foregoing document with the clerk of the court using the Electronic Case Filing "ECF" system which will send notification of such filing to the defense counsel(s).

/s/ Mark J. Tindall
MARK J. TINDALL
Assistant United States Attorney

---

[9] In its response, the government inadvertently noted the loss increased to $3,124,266.79 instead of $3,030,756.81, which is the correct figure.

**Government's Forfeiture Briefing – Page 6**